

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-26-2007

# Edgar v. Avaya Inc

Precedential or Non-Precedential: Precedential

Docket No. 06-2770

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Edgar v. Avaya Inc" (2007). *2007 Decisions.* Paper 322.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/322

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-2770
_____

JANE EDGAR,

Appellant,

v.

AVAYA, INC.; GARRY MCGUIRE, SR.; DONALD K.
PETERSON; JOSEPH P. LANDY; RICHARD F. WALLMAN;
BRUCE LASKO; and JOHN DOES 1-30

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 05-cv-03598)
District Judge: Honorable Stanley R. Chesler

_____

Argued April 24, 2007

Before: SCIRICA, Chief Judge, FUENTES and ALARCÓN,[*]
Circuit Judges.

(Filed  September 26, 2007)

_____

[*] The Honorable Arthur L. Alarcón, Senior Judge of the
United States Court of Appeals for the Ninth Circuit, sitting by
designation.

Mark C. Rifkin (Argued)
Wolf, Haldenstein, Adler, Freeman & Herz LLP
270 Madison Avenue
New York, NY 10016

      Counsel for Appellant

H. Douglas Hinson (Argued)
Alston & Bird LLP
1201 Peachtree Street
One Atlantic Center
Atlanta, GA 30309

Joseph A. Martin
Archer & Greiner, P.C.
One Centennial Square
P.O. Box 3000
Haddonfield, NJ 08033

      Counsel for Appellees

_____

OPINION OF THE COURT
_____

FUENTES, Circuit Judge.

In this lawsuit, Jane Edgar, a former employee of Avaya Inc., alleges that Avaya and several of its officers ("defendants") breached their fiduciary duties under § 404 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1104, by offering participants in three employee pension benefit plans the option of investing in Avaya common stock. Edgar commenced the lawsuit after the price of the stock declined from $10.69 to $8.01 per share, following Avaya's announcement that it would not meet its previously forecasted earnings goals for the 2005 fiscal

2

year.  We agree with the District Court that Edgar failed to plead facts sufficient to establish that defendants breached their fiduciary duties under ERISA by (1) imprudently offering Avaya common stock as an investment option, and (2) failing to disclose material information to plan participants.  Accordingly, we will affirm the District Court's dismissal of the amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## I.  BACKGROUND

Avaya, which came into existence in September 2000, as a spin-off from Lucent Technologies, Inc., designs, builds, and manages communications networks for businesses.  Avaya sponsors three employee pension benefit plans administered in accordance with ERISA, 29 U.S.C. §§ 1001-1461.[2]  At the time she

---

[1] The District Court's decision is set forth in Edgar v. Avaya, No. 05-3598, 2006 WL 1084087 (D.N.J. Apr. 25, 2006).

[2] An "employee pension benefit plan" is defined, in relevant part, as any employer-established or maintained plan that "(i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to termination of covered employment or beyond."  29 U.S.C. § 1002(2)(A).  The three plans are also "individual account plans" and "defined contribution plans" which allow participants to contribute to individual accounts and provide "*benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains, and losses*."  29 U.S.C. § 1002(34) (emphasis added).  In her brief, Edgar misleadingly refers to the plans as "traditional retirement plans."  We have explained, however, that a "traditional pension plan is a *defined benefit plan* that pays an annuity based on the retiree's earnings history, usually the most recent or highest paid years, and the number of completed years of service to the company."  Depenbrock v. CIGNA Corp., 389 F.3d 78, 80 n.1 (3d Cir. 2004) (emphasis added) (internal quotation marks omitted).  Thus, defined benefit plans, unlike defined contribution plans, guarantee participants a fixed-income at retirement.  See Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 439 (1999).

3

filed this lawsuit, Edgar participated in the Avaya Inc. Savings Plan ("the Union Plan"), one of the three plans offered to eligible employees. The other two plans are the Avaya Inc. Savings Plan for the Variable Workforce ("the Variable Plan") and the Avaya Inc. Savings Plan for Salaried Employees ("the Management Plan").[3] The Plans state that they are "intended to provide for a portion of the livelihood of Participants in their retirement," by "allow[ing] each Participant to elect to set aside a portion of his or her salary on a pretax and after tax basis." (J.A. at 383, 479, 539.) Participants are permitted to change or terminate the amount they elect to contribute, subject to certain requirements, at any time.

The Plans provide that the investment options "shall include a broad range of investment alternatives as the Company determines are necessary or appropriate to allow Participants to materially affect the potential return and achieve a portfolio with aggregate risk and return characteristics" typical of similar pension plans. (J.A. at 415, 504, 570.) The Plans offer three asset classes: short-term investments, bond and stock funds, and asset allocation funds. Although Avaya selects the investment options, Plan participants have discretion as to how their contributions are invested, including whether to invest all of their contributions in one fund or in a mix of funds. After initially electing which funds to invest in, a Plan participant may change how future contributions are invested and transfer existing investments into other funds.

During the relevant time period, Avaya offered Plan participants twenty-three investment options, which the Summary Plan Descriptions explain, "differ in their investment objectives and opportunities for risk and return." (J.A. at 255, 301, 340.) The Plan Descriptions state that participants should "consider the risks and potential rewards" of each option. (Id.) Of particular significance to this litigation, the Plans provide that the investment options "shall include the Avaya Stock Fund, which shall be

---

[3] We refer to the Union Plan, the Variable Plan, and the Management Plan collectively as "the Plans." Any reference to "Plan participants" refers to individuals who participated in any of the three Plans, unless otherwise specified.

4

invested primarily in shares of Avaya common stock, with a small portion in cash and other liquid investments." (J.A. at 415, 504, 570.) With respect to the Avaya Stock Fund, the Plan Descriptions state:

> The value of your investment will vary depending on Avaya's performance, the overall stock market, the performance and amount of short-term investments held by the fund, and the amount of fund expenses. Investing in a non-diversified single stock fund carries more risk than investing in a diversified fund.

(J.A. at 261, 307, 346.) According to Avaya's Form 11-K filed with the Securities and Exchange Commission ("SEC") on June 22, 2005, the Master Trust, which holds the total assets for all three Plans, was valued at $1.4 billion at the end of December 2004. Of this amount, approximately 16 percent, or $229 million, was invested in the Avaya Stock Fund.

On April 19, 2005, Avaya publicly released its quarterly earnings statement in which it announced that it was unlikely to meet its previously forecasted earnings goals for fiscal year 2005. The announcement explained that this was primarily due to disruption in sales caused by the company's implementation of new delivery methods; costs associated with integrating recent acquisitions; and "potential softness in the U.S. technology market." (J.A. at 69.) On the first trading day following the

5

announcement, the price of Avaya common stock fell from $10.69 to $8.01 per share.

In July 2005, Edgar filed this class action lawsuit pursuant to section 502 of ERISA, 29 U.S.C. § 1132(a)(2).[4] She seeks damages and injunctive relief under 29 U.S.C. § 1109(a), on behalf of all similarly situated individuals who participated in the Plans and invested in the Avaya Stock Fund between October 2004 and July 2005 ("the Class Period").[5] Defendants moved to dismiss the amended complaint pursuant to Rule 12(b)(1) for lack of standing, and Rule 12(b)(6) for failure to state a claim for breach of fiduciary duty. On April 25, 2006, the District Court granted defendants' Rule 12(b)(6) motion without reaching the standing issue.[6] This timely appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a

_____

[4] 29 U.S.C. § 1132(a) allows a participant in an ERISA plan to bring a civil action for breach of fiduciary duty. Graden v. Conexant Sys. Inc., __F.3d __, No. 06-2337, 2007 WL 2177170, at *2 (3d Cir. July 31, 2007).

[5] 29 U.S.C. § 1109(a) states that a fiduciary who breaches his or her duty in administering an ERISA plan must "make good to such plan any losses" resulting from the breach, and authorizes other equitable relief as a court may find appropriate. 29 U.S.C. § 1109(a).

[6] Defendants argued that Edgar lacked standing to sue on behalf of participants in the Variable Plan and the Management Plan. The District Court recognized that standing is typically a threshold jurisdictional issue. But, because defendants conceded that Edgar had standing to sue on behalf of participants in the Union Plan, a ruling on the Rule 12(b)(1) motion would not have completely disposed of the case. See Edgar, 2006 WL 1084087, at *3 n.3.

district court's dismissal of claims pursuant to Rule 12(b)(6). Miller v. Fortis, 475 F.3d 516, 519 (3d Cir. 2007). We accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Id.

## III. DISCUSSION

We first address Edgar's argument that defendants breached their fiduciary duties by imprudently offering Avaya common stock as an investment option during the Class Period. We then turn to her contention that defendants had a duty to disclose to Plan participants Avaya's allegedly deteriorating financial condition.

### A. Duty of Prudence

Section 404 of ERISA imposes the following duty on ERISA fiduciaries:

> (a) Prudent man standard of care
> (1) . . . a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . .
> . . .
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an

enterprise of a like character and with like aims;
(C) by diversifying the investments of the plan so as
to minimize the risk of large losses, unless under the
circumstances it is clearly prudent not to do so; and
(D) in accordance with the documents and
instruments governing the plan . . . .

29 U.S.C. § 1104(a)(1).[7]  In rejecting Edgar's prudence claim, the
District Court first determined that defendants' conduct should be
reviewed under an abuse of discretion standard, and then concluded
that Edgar failed to allege facts sufficient to establish an abuse of
discretion.  We agree with both rulings.

### 1) An abuse of discretion standard governs defendants' decision to offer Avaya stock

In concluding that defendants' decision to offer Avaya
common stock as an investment option is reviewed for an abuse of
discretion, the District Court relied on Moench v. Robertson, 62
F.3d 553 (3d Cir. 1995).  In Moench, we held that fiduciaries of an
Employee Stock Ownership Plan ("ESOP") are entitled to judicial
deference when they decide to invest plan assets in the sponsoring
company's stock.  Id. at 571.  Under ERISA, an ESOP is defined,
in relevant part, as an individual account plan "which is designed
to invest primarily in qualifying employer securities."  29 U.S.C.
§ 1107(d)(6).  Although the Plans are not ESOPs, we agree with
the District Court that the same deferential standard applies here.

Moench involved an employer-sponsored ESOP which
required the Trustee to "invest all contributions received under the
terms of the plan . . . in ESOP stock."  Moench, 62 F.3d at 558.
After the price of the stock declined dramatically, a former
employee and participant in the ESOP sued the fiduciaries of the

---

[7] We have observed that 29 U.S.C. § 1104(a) "in essence,
codifies and makes applicable to . . . fiduciaries certain principles
developed in the evolution of the law of trusts."  In re Unisys Sav.
Plan Litig., 74 F.3d 420, 434 (3d Cir. 1996) (internal quotation
marks omitted).

8

plan for breach of their duty under ERISA, claiming that they should have diversified plan assets in light of the company's financial deterioration. Id. at 559-60. On appeal, we reversed the district court's summary judgment ruling in favor of defendants and held that "in limited circumstances, ESOP fiduciaries can be liable under ERISA for continuing to invest in employer stock according to the plan's direction." Id. at 556. We explained that although the "primary purpose" of the ESOP was to invest in employer stock, defendants were not "absolutely require[d]" to do so; rather, they retained limited discretion over investment decisions.[8] Id. at 568.

Turning to the standard governing defendants' discretionary decision to offer employer securities as an investment option, we first considered the unique status of ESOPs under ERISA. Specifically, we noted that ESOP fiduciaries are exempt from the duty to diversify imposed by § 1104(a)(1)(C), and from § 1106(b)(1)'s strict prohibition against dealing with a party in interest.[9] Id. at 568. We explained that these exceptions "arise[]

---

[8] For example, we observed that the ESOP stated that funds were to be invested "primarily," not "exclusively," in employer stock, and that defendants had conceded that, on prior occasions, they interpreted plan documents as permitting them to "refrain from" making such investments if necessary. Id. at 567. In addition, we explained that to interpret the ESOP as stripping defendants of all investment discretion would conflict with the common law rule that a "trustee in certain narrow instances must take actions at odds with how it is directed generally to act." Id.

[9] Under § 1104(a)(1), plan fiduciaries are required to "diversify[] the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so." 29 U.S.C. § 1104(a)(1)(C). The Seventh Circuit has observed that because "the very purpose of an ESOP is to give employees stock in the employer, it would be anomalous if the ESOP's trustees were required to sell most of the stock donated by the employer in order to create a diversified portfolio of stocks." Steinman v. Hicks, 352 F.3d 1101, 1103 (7th Cir. 2003). Section 1106(b)(1) prohibits an ERISA fiduciary from "deal[ing] with the

9

out of the nature and purpose of ESOPs themselves," id., which as set forth in § 1107, is to "invest primarily in qualifying employer securities." 29 U.S.C. § 1107(d)(6)(A). In other words, "the concept of employee ownership constituted a goal in and of itself." Moench, 62 F.3d at 568.

Despite the special status of ESOPs, we emphasized that ESOP fiduciaries are still required to act in accordance with the duties of loyalty and care that apply to fiduciaries of typical ERISA plans. Id. at 569; see also Kuper v. Iovenko, 66 F.3d 1447, 1457 (6th Cir. 1995) ("[T]he purpose of ESOPs cannot override ERISA's goal of ensuring the proper management and soundness of employee benefit plans."); Fink v. Nat'l Sav. & Trust Co., 772 F.2d 951, 955-56 (D.C. Cir. 1985) ("The investment decisions of a profit sharing plan's fiduciary are subject to the closest scrutiny under the prudent person rule, in spite of the strong policy and preference in favor of investment in employer stock.") (internal quotation marks omitted). "In other words, Congress expressly intended that the ESOP would be both an employee retirement benefit plan and a technique of corporate finance that would encourage employee ownership." Moench, 62 F.3d at 568 (internal quotation marks omitted). Accordingly, we declined to adopt a per se rule that the decision of an ESOP fiduciary to invest in employer securities is not subject to judicial review.[10] See id. at 571.

In order to fashion an appropriate standard that would balance the two roles that ESOPs are required to serve—as a mechanism of corporate finance and a vehicle for retirement savings—we noted that "trust law distinguishes between two types of directions." Id. at 571. On the one hand, if the trust "requires"

---

assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1).

[10] We noted that we were "not concerned with a situation in which an ESOP plan in absolute unmistakable terms requires that the fiduciary invest the assets in the employer's securities regardless of the surrounding circumstances." Id. at 567 n.4. We explicitly left open the issue of whether there could still be a breach of fiduciary duty in such a case. Id.

the trustee to invest in a particular stock, then the trustee is "immune from judicial inquiry." Id. On the other hand, if the trust merely "permits" the trustee to invest in a particular stock, then the trustee's investment decision is subject to de novo judicial review. Id.

The situation presented in Moench did not fit either category. Defendants were "not absolutely required to invest in employer securities," but they were "more than simply permitted to make such investments." Id. We therefore determined that an intermediate abuse of discretion standard would strike the appropriate balance between immunity from judicial review, at one extreme, and de novo review, at the other. Accordingly, we set forth the following rebuttable presumption: "[A]n ESOP fiduciary who invests [plan] assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision. However, the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities." Id. Edgar refers to this deferential abuse of discretion standard as Moench's "presumption of prudence." (See, e.g., Appellant's Br. at 23.)

Edgar argues that Moench's presumption of prudence does not apply here, because the Plans at issue in this case are not ESOPs. We are not persuaded. An ESOP is one of several types of pension plans categorized under ERISA as "Eligible Individual Account Plans" or "EIAPs." 29 U.S.C. § 1107(d)(3)(A). An EIAP is defined as "an individual account plan which is (i) a profit-sharing, stock bonus, thrift, or savings plan; (ii) an employee stock ownership plan; or (iii) a money purchase plan which . . . [is] invested primarily in qualifying employer securities." Id. It is undisputed that the Plans at issue in this case are EIAPs.[11]

Because one of the purposes of EIAPs is to promote investment in employer securities, they are subject to many of the

_____

[11] There is also no dispute that, as in Moench, defendants retained limited discretion not to offer Avaya common stock as an investment option.

11

same exceptions that apply to ESOPs. See Wright v. Oregon Metallurgical Corp., 360 F.3d 1090, 1094 (9th Cir. 2004). For example, § 1104(a)(2) provides that all EIAPs, not just ESOPs, are exempt from ERISA's duty to diversify: "In the case of an *eligible individual account plan . . .* the diversification requirement . . . and the prudence requirement (only to the extent that it requires diversification) . . . is not violated by acquisition or holding of . . . qualifying employer securities." 29 U.S.C. § 1104(a)(2) (emphasis added). And § 1108(e)(3)(A) states that ERISA's prohibitions against dealing with a party in interest or self-dealing "shall not apply to the acquisition or sale by a plan of qualifying employer securities . . . if the plan is *an eligible individual account plan*." 29 U.S.C. § 1108(e)(3)(A) (emphasis added). Consequently, EIAPs, like ESOPs, "place employee retirement assets at much greater risk" than traditional ERISA plans. Wright, 360 F.3d at 1097 n.2. Given these similarities, we conclude that the underlying rationale of Moench applies equally here.[12]

In sum, we conclude that the District Court correctly determined that Moench's abuse of discretion standard governs judicial review of defendants' decision to offer the Avaya Stock Fund as an investment option.

---

[12] In reaching our conclusion, we reject Edgar's argument that our decision In re Schering-Plough Corp. ERISA Litigation, 420 F.3d 231 (3d Cir. 2005), requires a contrary result. In Schering-Plough, we addressed the narrow question of whether participants in an ERISA retirement savings plan could prosecute a derivative action on behalf of the plan even though the alleged losses affected only a subset of participants who invested in employer stock. Id. at 232. In resolving the standing issue, we referenced Moench only to state that it was inapposite because the plan at issue in Schering-Plough was not an ESOP, and did not even direct plan fiduciaries to offer employer stock as an investment option. See id. at 238 & n.5. In addition, we explicitly stated that we were expressing "no opinion on the significance" of §1104(a)(2)—which as previously stated, exempts EIAPs from the duty to diversify—to the facts presented in the case. Id. at 238 n.5.

*2) The facts alleged in the amended complaint do not establish an abuse of discretion*

Having set forth the appropriate standard of judicial review, the District Court then correctly concluded that Edgar failed to plead facts sufficient to establish that defendants abused their discretion.

In order to rebut the presumption that a fiduciary acted prudently in investing in employer securities, a "plaintiff must show that the ERISA fiduciary could not have believed reasonably that continued adherence to the ESOP's direction was in keeping with the settlor's expectations of how a prudent trustee would operate." Moench, 62 F.3d at 571. Thus, "the plaintiff may introduce evidence that 'owing to circumstances not known to the settlor and not anticipated by him,'" investing in employer securities "'would defeat or substantially impair the accomplishment of the purposes of the trust.'" Id. (quoting Restatement (Second) § 227 comment g)).

In Moench, we observed that the plaintiff alleged "that the precipitous decline in the price of [the employer's stock], as well as [defendants'] knowledge of its impending collapse and [their] own conflicted status, changed circumstances to such an extent that [defendants] could effectuate the purposes of the trust only by deviating from the trust's direction or by contracting out investment decisions to an impartial outsider." Id. at 572. Specifically, plaintiff proffered evidence that during the relevant two-year period, the price of the company's stock declined from $18.25 to less than $0.25 per share; federal regulators informed the company's Board of Directors that they had concerns about the company's financial condition and had uncovered various regulatory violations; the Federal Deposit Insurance Corporation eventually took over control of one of the company's subsidiaries; and, ultimately, the company filed for Chapter 11 bankruptcy. Id. at 557. Based on these facts, we remanded the matter to the district court for further development of the record. Id. at 572.

Here, Edgar alleges in the amended complaint that defendants abused their discretion by knowingly or recklessly

disregarding the fact that: (1) the cost of integrating a recent corporate acquisition was greater than defendants publicly represented; (2) rather than having a positive financial impact, the acquisition reduced Avaya's earnings by at least $.06 per share during the 2005 fiscal year; (3) changes to Avaya's method of delivering products to market were causing severe disruptions in sales; and (4) the company was experiencing a dramatic reduction in demand for its products. Therefore, Edgar contends, "Avaya had no reasonable basis to project an increase in profits or an increase in revenues of 25-27% for fiscal 2005." (J.A. at 54-55, 59-60, 62, 64-65, 68.)

Edgar's allegations, if true, indicate that during the Class Period, Avaya was undergoing corporate developments that were likely to have a negative effect on the company's earnings and, therefore, on the value of the company's stock. In fact, this is precisely what happened when the price of Avaya stock declined by $2.68 per share following Avaya's April 19, 2005, earnings announcement. We cannot agree, however, that these developments, or the corresponding drop in stock price, created the type of dire situation which would require defendants to disobey the terms of the Plans by not offering the Avaya Stock Fund as an investment option, or by divesting the Plans of Avaya securities. Indeed, had defendants divested the Plans of Avaya common stock during the Class Period, they would have risked liability for having failed to follow the terms of the Plans.[13] See Moench, 62 F.3d at

---

[13] We do not interpret Moench as requiring a company to be on the brink of bankruptcy before a fiduciary is required to divest a plan of employer securities. However, we believe that the bare allegations of fraud and other wrongdoing set forth in Edgar's amended complaint are insufficient to establish an abuse of discretion, particularly when a review of Avaya's historic stock price shows that, by July 26, 2005, the price of the stock rebounded to $10.74 per share—$.05 per share more than its trading price on the day of the April 19, 2005 earnings announcement. See Oran v. Stafford, 226 F.3d 275, 288 (3d Cir. 2000) (noting that a court may "take judicial notice of facts that are 'capable of accurate and ready determination by resort to sources whose accuracy cannot

14

571-72 ("[C]ourts must recognize that if the fiduciary, in what it regards as an exercise of caution, does not maintain the investment in the employer's securities, it may face liability for that caution, particularly if the employer's securities thrive.").

Finally, Edgar argues that the District Court's application of Moench's presumption of prudence at the motion to dismiss stage is somehow inconsistent with the liberal pleading standards set forth in Rule 8 of the Federal Rules of Civil Procedure. We are unconvinced. Quite simply, if a plaintiff does not plead all of the essential elements of his or her legal claim, a district court is required to dismiss the complaint pursuant to Rule 12(b)(6). For example, in Wright v. Oregon Metallurgical Corp., the Ninth Circuit concluded that "Plaintiffs' alleged facts effectively preclude[d] a claim under Moench, eliminating the need for further discovery." 360 F.3d at 1098. As the Court noted, "published accounts of [the employer's] earnings and financial fundamentals during the relevant period, attached to the complaint, demonstrate that [the employer] was far from the sort of deteriorating financial circumstances involved in Moench and was, in fact, profitable and paying substantial dividends throughout that period." Id. Given these circumstances, "[m]ere stock fluctuations, even those that trend downward significantly, are insufficient to establish the requisite imprudence to rebut the Moench presumption." Id. at 1099. We find the Ninth Circuit's reasoning to be logical, and see no reason to allow this case to proceed to discovery when, even if the allegations are proven true, Edgar cannot establish that defendants abused their discretion.[14] Accordingly, we will affirm

reasonably be questioned'") (quoting Fed. R. Evid. 201(b)(2)).

[14] Edgar cites a number of district court cases suggesting that it is improper to consider Moench's presumption of prudence in ruling on a motion to dismiss. See, e.g., Rankin v. Rots, 278 F. Supp. 2d 853, 879 (E.D. Mich. 2003); In re Elec. Data Sys. Corp., 305 F. Supp. 2d 658, 669-70 (E.D. Tex. 2004). It is our view, however, that a duty of prudence claim that is on its face inadequate as a matter of law obviates the need for discovery.

the District Court's dismissal of Edgar's prudence claim.[15]

## B. Duty of Disclosure

Edgar argues that even if the adverse corporate developments revealed in Avaya's April 19, 2005, earnings announcement did not require defendants to divest the Plans of Avaya common stock, "[a]t a minimum, they were required to disclose the materially adverse facts to the Plans and their participants" prior to the earnings announcement. (J.A. at 38.) We do not agree.

It is well-established that an ERISA fiduciary "may not materially mislead those to whom section 1104(a)'s duties of loyalty and prudence are owed." In re Unisys Sav. Plan Litig., 74 F.3d 420, 440 (3d Cir. 1996). Indeed, the "'duty to inform is a constant thread in the relationship between beneficiary and trustee; it is not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful.'" Id. at 441 (quoting Bixler v. Cent. Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292 (3d Cir. 1994)). In Unisys, we held that the same duty applies to "alleged material misrepresentations made by fiduciaries to participants regarding the risks attendant to a fund investment." Id. at 442. In the investment context, "a misrepresentation is 'material' if there was a substantial likelihood that it would have misled a reasonable participant in making an adequately informed decision about whether to place or maintain monies" in a particular fund. Id.

The Summary Plan Descriptions inform Plan participants that their investments are tied to the market performance of the

---

[15] Edgar summarily argues in her brief on appeal that because the District Court improperly dismissed her duty of prudence claim, it should not have dismissed her claims for breach of the duty of loyalty, breach of the duty to monitor fiduciaries, and co-fiduciary liability. Because we affirm the District Court's dismissal of Edgar's duty of prudence claim, there is no basis for us to disturb the District Court's dismissal of these other claims.

funds; that each fund carries different risks and potential returns; that participants are responsible for investigating the investment options; and that, in doing so, they might consider seeking the advice of a personal financial advisor. In addition, the Plan Descriptions explicitly warn participants that there are particular risks associated with investing in a non-diversified fund. Nowhere in the Plan Descriptions or the Plans themselves are participants guaranteed a particular return on their investments. These disclosures were sufficient to satisfy defendants' obligation not to misinform participants about the risks associated with investment in the Avaya Stock Fund. Under Third Circuit law, they did not have a duty to "give investment advice" or "to opine on" the stock's condition. See id. at 443. Rather, the information provided Plan participants the opportunity to make their own informed investment choice.

To the extent Edgar argues that the adverse development disclosed in the April 19, 2005 earnings announcement should have been disclosed earlier, we agree with the District Court that had the Avaya defendants "publicly released any adverse information they had prior to the April 2005 announcement, under the 'efficient capital markets hypothesis,' such a disclosure would have resulted in a swift market adjustment." Edgar, 2006 WL 1084087, at *9. Therefore, as the District Court reasoned, "the Plans would not have been able to sell their Avaya stock holdings at the higher, pre-announcement price, and the Plans would have sustained the same losses they incurred when the Company publicly announced the quarterly results in April 2005." Id. In addition, the District Court observed, had defendants decided to divest the Plans of Avaya stock prior to April 19, 2005, based on information that was not publicly available, they would have faced potential liability under the securities laws for insider trading. Id. at *10. That observation does not, as Edgar argues, mean that the federal securities laws relieve fiduciaries of their obligations under ERISA.

In sum, we conclude that defendants fulfilled their duty of disclosure under ERISA by informing Plan participants about the potential risks associated with investment in the Avaya Stock Fund. That defendants did not inform Plan participants about several adverse corporate developments prior to Avaya's earnings

17

announcement, does not constitute a breach of their disclosure obligations under ERISA.

## IV.

For the reasons stated above, we conclude that Edgar failed to plead facts that, if proven, would establish that defendants abused their discretion by offering participants in the company's three pension benefit plans the option of investing in Avaya common stock. In addition, we conclude that defendants fulfilled their disclosure obligations under ERISA by apprising plan participants of the risks associated with investing in the Avaya Stock Fund. Accordingly, we will affirm the District Court's dismissal of the amended complaint pursuant to Rule 12(b)(6).