

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-13-2008

# Ward v. Avaya Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3246

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Ward v. Avaya Inc" (2008). *2008 Decisions*. Paper 239.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/239

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3246
_____

BYRON WARD

Appellant

v.

AVAYA INC; PENSION AND EMPLOYEE BENEFITS INVESTMENT
COMMITTEE, THE; JOHN DOES 1-10

Appellees.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 06-cv-01721)
District Judge: Honorable Joel A. Pisano
_____

Submitted Under Third Circuit LAR 34.1(a)
July 22, 2008

Before:  McKEE, FUENTES, and JORDAN, *Circuit Judges*
_____

(Filed November 13, 2008)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Byron Ward appeals an order of the District Court dismissing his claims against Avaya, Inc. ("Avaya") and Avaya's Pension and Employee Benefits Investment Committee (the "Committee") (collectively, the "defendants") for breach of fiduciary duties under the Employee Retirement and Income Securities Act ("ERISA"). We conclude that Ward's complaint fails to allege sufficient facts to overcome the presumption imposed by *Monech v. Robertson*, 62 F.3d 553 (3d Cir. 1995), that the defendants acted within their discretion in performing their fiduciary duties. Further, one of Ward's claims is barred by a previous class action settlement agreement. Accordingly, we will affirm the District Court.[1]

## I.    *Background*

Because we write only for the parties, we focus on those facts pertinent to the resolution of Ward's appeal. Ward is a former employee of Lucent Technologies, Inc. ("Lucent"). On September 30, 2000, he became an Avaya employee when Avaya was spun off from Lucent. In the course of the spin-off, Avaya established three ERISA plans (collectively, the "Plans"): the Avaya Inc. Savings Plan for Salaried Employees (the "Salaried Plan"), the Avaya Inc. Savings Plan (the "Union Plan"), and the Avaya Inc.

---

[1]The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §1132(e)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291. "We exercise plenary review over a district court's dismissal of claims pursuant to Rule 12(b)(6). We accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Edgar v. Avaya, Inc.*, 503 F.3d 340, 344 (3d Cir. 2007) (citations omitted).

Savings Plan for the Variable Workforce (the "Variable Plan"). The Salaried and Union Plans are successors to similar ERISA plans maintained by Lucent (the "Predecessor Plans").

All of the Plans are explicitly required to offer participants the option of investing in the Avaya Stock Fund, which, as its name implies, consists of shares of Avaya common stock. Additionally, the Predecessor Plans were required to offer Lucent employees the opportunity to invest in Lucent common stock. Contributions by Avaya employees who had invested in the Predecessor Plans prior to the spin-off were automatically transferred to the Salaried Plan or the Union Plan. Pursuant to that transfer, Lucent stock invested in the Predecessor Plans was transferred to the Plans' Lucent Stock Fund which, similar to the Avaya Stock Fund, consists of shares of Lucent common stock.

The crux of Ward's complaint is that the defendants breached their fiduciary duties under ERISA by investing the Plans' assets in the Avaya and Lucent Stock Funds. He alleges that, because of declining demand for Lucent's products and difficulties developing new products, the value of Lucent's stock dropped sixty percent during the nine-month period preceding the Avaya spin-off. He also alleges that Lucent's difficulties continued following the spin-off and that by October 30, 2003, its stock had lost approximately 90% of the value that it had held at the time of the spin-off.

Ward further alleges that Avaya also experienced serious financial difficulties after the spin-off. He stated that the price of Avaya's stock, which began trading at $22.88 a

3

share immediately after the September 2000 spin-off, declined drastically, falling to a low of $1.15 a share on August 2, 2002. Ward also alleges that despite Lucent's and Avaya's financial difficulties, the Committee allowed the Plans to invest heavily in the Avaya and Lucent Stock Funds, both immediately following the spin-off and during the period of deteriorating stock prices for both companies.

Based on the above allegations, Ward asserts four class action claims against the defendants for breach of fiduciary duty under ERISA. Only Claims II-IV remain at issue in this appeal. Ward purports to bring Count II of his complaint on behalf of a class consisting of "[a]ll persons ... who were participants or beneficiaries in the Plans at any time between September 29, 2000 and April 24, 2003, whose accounts in the Plans included investments in Avaya securities (the 'Avaya Class')." (JA at 36 ¶ 29.) He alleges that the defendants had "failed to conduct an adequate investigation of Avaya securities or the Avaya Stock Fund ... nor did [they] take any actions to prevent the Plans from investing in Avaya securities." (JA at 61, Compl. at ¶ 141.) Ward further alleges that if the defendants had conducted an investigation, they would have concluded that "Avaya securities and the Avaya Stock Fund ... were not prudent investment options for the Plans' assets, participant contributions, or Avaya's matching contributions." (JA at 61 ¶ 140.)

Ward purports to bring Count III of his complaint on behalf of a class consisting of "[a]ll persons ... who were participants or beneficiaries in the Plans at any time between September 29, 2000 and October 30, 2003, whose accounts in the Plans included

4

investments in Lucent securities (the 'Lucent Class')." (JA at 36 ¶ 30.) Unsurprisingly, Ward makes the same claim in Count III regarding the Lucent Class and the Lucent Stock Fund that he makes in Count II regarding the Avaya Class and the Avaya Stock Fund. Finally, Ward purports to bring Count IV of his complaint on behalf of both the Avaya and the Lucent Classes, and claims that the defendants had breached their fiduciary duty to "adequately monitor the activities of other fiduciaries and ... to replace them with fiduciaries willing and able to make prudent investment decisions that were solely in the interests of the Plan's participants and beneficiaries." (JA at 70 ¶ 180.)

On September 12, 2006, the District Court partially granted the defendants' motion to dismiss and dismissed Counts II-IV of Ward's complaint. *Ward v. Avaya, Inc.*, 487 F. Supp. 2d 467 (D. N.J. 2007). The Court concluded that Count II could not survive because he had failed to plead sufficient facts to overcome the presumption from *Monech v. Robertson*, 62 F.3d 553 (3d Cir. 1995), that the defendants had acted within their discretion by investing in the Avaya Stock Fund. *Ward*, 487 F. Supp 2d at 479-80. The District Court also dismissed Count III, concluding that it was barred by a class action settlement agreement reached in *Reinhart v. Lucent Technologies, Inc.*, No. 01-CV-3491 (D. N.J.). *Id.* at 480-81. Finally, the District Court dismissed Count IV because Ward had failed to state valid claims for breach of fiduciary duty. *Id.* at 481-82.

Ward chose for a time to proceed with his claim in Count I, wherein he asserted that Avaya and the Committee had violated their fiduciary duties by acquiring Avaya stock for more than adequate consideration. However, he eventually moved to dismiss

5

Count I with prejudice, and the District Court granted the motion, thereby disposing of all of Ward's claims. Shortly thereafter, Ward filed a timely notice of appeal from the dismissal of Counts II-IV of his complaint.

III. Discussion

A. Ward's Count II Claim for Breach of Fiduciary Duty

In *Edgar v. Avaya, Inc.*, 503 F.3d 340 (3d Cir. 2007), we considered an appeal from a motion to dismiss a class action lawsuit involving the same Avaya Plans at issue in Count II of Ward's complaint.[2] *Id.* at 343. As Ward does in Count II, the *Edgar* plaintiff alleged that Avaya and the Committee had breached their fiduciary duties by investing the Plans' assets in the Avaya Stock Fund despite Avaya's financial difficulties.[3] *Id.* at

---

[2]In that case, we used the same short-hand terminology to refer to the Union Plan and the Variable Plan, but we chose to refer to the Avaya Inc. Savings Plan for Salaried Employees as the "Management Plan" instead of the "Salaried Plan." *Edgar*, 503 F.3d at 343.

[3]The class at issue in *Edgar* covered "individuals who participated in the [Avaya] Plans and invested in the Avaya Stock Fund between October 2004 and July 2005." 503 F.3d at 344. As noted, Ward's proposed class covers "[a]ll persons ... who were participants or beneficiaries in the Plans at any time between September 29, 2000 and

6

344.  Relying on our decision in *Monech v. Robertson*, 62 F.3d 533 (3d Cir. 2005), we concluded that the *Edgar* plaintiff could succeed on her claims only if she had pleaded sufficient facts to overcome the presumption that Avaya and the Committee had "acted consistently with ERISA by virtue of [the] decision [to invest in the Avaya Stock Fund]." 503 F.3d at 347 (quoting *Monech,* 62 F.3d at 571).  To do so, she had to plead sufficient facts showing that "that the fiduciary abused its discretion by investing in employer securities." *Id.* (citation omitted).

Apart from a difference in the time periods used to define the classes in each case, Ward's claim in Count II is identical to the claims made in *Edgar*.[4]  Thus, the sole issue before us as to that claim is whether it meets the standard we articulated in *Edgar* and *Monech*.  Ward argues that his complaint passes muster because it alleges that if the defendants had investigated whether the Avaya Stock Fund was a prudent investment during the Avaya Class period, they would have realized from the outset that it was not, and, as a result, divested the Plans of Avaya stock and refused to accept new investments in that stock.

---

April 24, 2003, whose accounts in the Plans included investments in Avaya securities." (JA at 36 ¶ 30.)

[4]In his opening brief, Ward challenged whether the *Monech* presumption applied to the Plans and whether the District Court could apply the presumption when deciding his motion to dismiss.  (Appellant Br. at 16-36.)  In his reply brief, however (Reply Br. at 1 n.1), he recognizes that we answered both of those questions affirmatively in *Edgar*.  503 F.3d at 347-49.

In *Edgar*, we explained that, in the context of an ERISA plan that offers employees the option of investing in a fund consisting solely of the employer's own securities, there is a "presumption that a fiduciary acted prudently in investing in employer securities" and that, to rebut the presumption, "a 'plaintiff must show that the ERISA fiduciary could not have believed reasonably that continued adherence to the [Plan's] direction was in keeping with the settlor's expectations of how a prudent trustee would operate.'" 503 F.3d at 348 (quoting *Moench*, 62 F.3d at 571). In determining whether a plaintiff has made that showing, we must "be cognizant that as the financial state of the company deteriorates ... fiduciaries who double as directors of the corporation often begin to serve two masters. And the more uncertain the loyalties of the fiduciary, the less discretion it has to act." *Monech*, 62 F.3d at 572. However, we must also be aware that "if the fiduciary, in what it regards as an exercise of caution, does not maintain the investment in the employer's securities, it may face liability for that caution." *Id.* In *Monech*, we remanded the defendant's breach of fiduciary duty claims for further consideration by the district court because, during the class period,

> the price of the [defendant's] stock declined from $18.25 to less than $0.25 per share; federal regulators informed the [defendant's] Board of Directors that they had concerns about the company's financial condition and had uncovered various regulatory violations; the Federal Deposit Insurance Corporation eventually took over control of one of the [defendant's] subsidiaries; and, ultimately, the [defendant] filed for Chapter 11 bankruptcy.

*Edgar*, 503 F.3d at 348 (citing 62 F.3d at 557).

In *Edgar*, however, we held that the plaintiff was unable to overcome the *Monech* presumption because she alleged only that Avaya's stock price declined by $2.68 per share during the class period. *Id.* We explained that such a reduction in share price did not

> create[] the type of dire situation which would require defendants to disobey the terms of the Plans by not offering the Avaya Stock Fund as an investment option, or by divesting the Plans of Avaya securities. Indeed, had defendants divested the Plans of Avaya common stock during the Class Period, they would have risked liability for having failed to follow the terms of the Plans.

*Id.* at 348-49 (citation omitted).

We further explained that, while *Monech* did not require "a company to be on the brink of bankruptcy before a fiduciary is required to divest a plan of employer securities," the *Edgar* plaintiff's "bare allegations of fraud and other wrongdoing set forth in [her] ... complaint are insufficient to establish an abuse of discretion, particularly [because Avaya's stock price had risen significantly by the end of the class period.]" *Id.* at 349 n. 13. Taken together, *Monech* and *Edgar* stand for the proposition that short-term financial difficulties do not give rise to a duty to halt or modify investments in an otherwise lawful ERISA fund that consists primarily of employer securities.

In light of the allegations in the complaint, we are persuaded, as was the District Court, that Ward's complaint is insufficient to overcome the presumption articulated in *Monech* and *Edgar*. At the outset of the class period immediately following the spin-off on September 30, 2000, Avaya's stock traded at $22.18 a share. As Ward takes pains to

9

point out, it initially lost much of that value, and by August 2, 2002, after fluctuating

significantly for some time, it reached a low of $1.15 a share.  By April 25, 2003, the day

after Ward's Count II class period ended, Avaya stock was trading at $3.24 per share.

Following the end of the class period, however, Avaya's stock continued to rise and, by

August 2003, was trading at around $10.00 a share.  Between October and December

2003, the stock was trading between $12.00 and $14.00 a share.  During 2004, Avaya

stock usually closed at between $12.00 and $16.00 a share.  Commensurate with its rising

stock price, Avaya reported significant positive net income in 2003 and 2004.[5]  Further,

like the plaintiff in *Edgar* and unlike the plaintiff in *Monech*, Ward's complaint fails to

point to anything other than Avaya's financial struggles to support his breach of fiduciary

duty claim.  Thus, at most, "[Ward's] allegations, if true, indicate that during the Class

Period, Avaya was undergoing corporate developments that were likely to have a

negative effect on the company's earnings and, therefore, on the value of the company's

---

[5]Ward contends that it is inappropriate for us to consider any improvements in Avaya's stock price or in its financial situation following the end of the class period he has defined in Count II.  We disagree.  Because plaintiffs define the relevant class period, adopting such a rule would allow plaintiffs to bring breach of fiduciary duty claims based entirely on a narrow window of financial difficulty, potentially eviscerating the abuse of discretion standard we articulated in *Monech* and *Edgar*.  Further, although we would ordinarily refuse to consider matters not contained in the complaint when deciding a motion to dismiss, we may take judicial notice of the well-publicized rise in Avaya's stock price following the end of the class period Ward defines in Count II.  *Cf. Edgar*, 503 F.3d at 349 n.13 (conducting a "review of [the rise in] Avaya's historic stock price [during the *Edgar* class period]," and noting that "a court may take judicial notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned") (quoting *Oran v. Stafford*, 226 F.3d 275, 288 (3d Cir. 2000)).

stock." *Id.* at 348. That alone does not suffice to rebut the presumption that the defendants acted within their discretion in refusing to halt or alter the Plan's investments in Avaya stock. Therefore, we will affirm the District Court's dismissal of his Count II claim.

B.      *Ward's Count III Claim For Breach of Fiduciary Duty*

Ward's Count III claim requires us to address the effect of a class action settlement reached in *Reinhart v. Lucent Technologies, Inc.*, No. 01-CV-3491 (D. N.J.). That agreement settled claims that Lucent had breached its fiduciary duties under the Predecessor Plans by continuing to offer Lucent stock as an investment option despite financial setbacks similar to Avaya's. The *Reinhart* settlement agreement specifically listed Avaya as a "Released Party" and defined the "Settled Claims" as "any and all claims, rights or causes of action ... that have been or could have been asserted ... by the Plans, Claimants, or any of them against any of the Released Parties which arise out of or relate in any way to the allegations ... set forth or referred to in [the complaint]." (JA at 409-09 ¶1(ff)). The settlement agreement defined "Plans" to mean the "two Lucent 401(k) plans." (JA at 400). The agreement further defined "Claimants" as those who were participants and beneficiaries of the two Lucent Plans between December 31, 1999 and March 27, 2003.

Ward argues that his claim is not covered by the *Reinhart* settlement agreement for several reasons. First, he argues that, because the settlement agreement covered only claims "held by ... the Lucent Plans ... and by ... [participants and beneficiaries of the two

Lucent plans]," it "did not purport to settle claims held by the Avaya Plans or by participants and beneficiaries of the Avaya Plans." (Appellant Br. at 45.) Ward further argues that his Count III claim against Avaya is not a "Settled Claim" because that claim is not related to the same allegations made against Lucent in *Reinhart*. Finally, he argues that without discovery, it is impossible to determine whether there is enough factual similarity between the *Reinhart* litigation and his Count III claim to apply the *Reinhart* release.

Ward's arguments require us to examine the terms of the *Reinhart* settlement agreement closely. "Interpreting a settlement agreement presents a question of contract law, in which the primary object is to give effect to the intention of the parties." *In re Columbia Gas Sys. Inc.*, 50 F.3d 233, 241 (3d Cir. 1995) (citations and punctuation omitted). After examining the agreement, we agree with the District Court that Ward's Count III claim is barred. First, although Ward is correct that the Avaya Plans are not specifically mentioned in the agreement, we fail to see why the parties in *Reinhart* would have included Avaya as a "Released Party" if they did not intend the agreement to cover claims against Avaya for breaches of fiduciary duty over the Avaya Plans. This is particularly so because Avaya was only a fiduciary of the Avaya Plans, not the Lucent Plans and, therefore, it could not have been liable as a fiduciary for any alleged mismanagement of the Lucent Plans. Second, the underlying claim in both *Reinhart* and Count III of Ward's complaint – that it was imprudent to continue to offer Lucent stock as an investment option because of Lucent's financial struggles – is the same. Additionally,

12

the Avaya Plans at issue in Count III are successor plans, and Avaya is a successor fiduciary, to the Lucent Plans and the Lucent fiduciary at issue in *Reinhart*. Finally, the class period in *Reinhart* is virtually identical to the class period that Ward defines in Count III, and Ward does not dispute that he is a member of the *Reinhart* class.[6] *Ward v. Avaya, Inc.*, 487 F. Supp. 2d 467, 480-81 (D. N.J. 2007).

Ward also argues that Count III should go forward because any assent by members of the classes defined in his complaint to the *Reinhart* settlement agreement was not knowing and voluntary. The District Court rejected that argument, concluding that it was an impermissible collateral attack on the final judgment in *Reinhart*. *Id.* We agree. Ward contends that he has not mounted a collateral attack on *Reinhart* because his Count III claim is not included in that settlement. However, for the reasons previously explained, Ward is incorrect. Consequently, Ward may not now claim that his assent to the settlement was defective.[7] *See Interdynamics, Inc. v. Firma Wolf*, 653 F.2d 93, 96-97

---

[6]Because Count III fails due to the language of the settlement agreement, we reject Ward's contention that discovery is necessary to decide that claim.

[7]Ward also raises a number of other arguments in his brief, including that the notice provided to *Reinhart* class members did not satisfy due process, and that, because claims to recover plan losses are derivative in nature, the *Reinhart* settlement cannot bar his claims unless that settlement explicitly mentioned claims by Avaya Plan participants and beneficiaries against the Avaya Plans. None of those arguments, however, were raised before the District Court, and we have "consistently held that [we] will not consider

(3d Cir. 1991) (holding that "a consent decree, although negotiated by the parties, is a judicial act. ... Such a decree possesses the same force with regard to res judicata and collateral estoppel as a judgment entered after a trial on the merits.") (citation omitted).

Finally, because Ward fails to state any claims for breach of fiduciary duty in Counts II and III of his complaint, we will also affirm the dismissal of his claim in Count IV. *See Edgar*, 503 F.3d at 349 n.15 (dismissing the plaintiff's failure to monitor claim because she had failed to adequately allege any breaches of fiduciary duty).[8]

*IV.* *Conclusion*

Accordingly, as Ward has failed to state valid claims in Counts II-IV of his complaint we will affirm the District Court's dismissal of those counts.

---

issues that are raised for the first time on appeal." *Harris v. City of Philadelphia*, 35 F.3d 840, 845 (3d Cir. 1994).

[8]After the parties filed their briefs, we granted Ward's motion to supplement the record. The defendants then filed a motion to reconsider. In light of our disposition of Ward's claims, we will deny the motion to reconsider as moot.

14