11-2289-cv

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 4th day of September, two thousand twelve.

PRESENT:   REENA RAGGI,
           GERARD E. LYNCH,
           DENNY CHIN,
                       *Circuit Judges*.

-----------------------------------------------------------------
IN RE: GLAXOSMITHKLINE ERISA LITIG.
-----------------------------------------------------------------

CHARLES J. GUM, on Behalf of Himself and a Class of Persons Similarly Situated, MARILYN S. HAYES,
                       *Plaintiffs-Appellants*,

v.                                              No. 11-2289-cv

GLAXOSMITHKLINE RETIREMENT SAVINGS PLAN COMMITTEE, ANDREW WITTY, JEAN-PIERRE GARNIER, JULIAN HESLOP, MONCEF SLAOUI, CHRISTOPHER VIEHBACHER, CHRISTOPHER GENT, ROY ANDERSON, STEPHANIE BURNS, LAWRENCE CULP, CRISPIN DAVIS, DERYCK MAUGHAN, JAMES MURDOCH, DANIEL PODOLSKY, IAN PROSSER, RONALDO SCHMITZ, TOM DE SWAAN, ROBERT WILSON, MICHELLE

KILLIAN, JUDITH M. LYNCH, GLAXOSMITHKLINE LLC, DAVID DOWNES, ROGER EMERSON, MICHAEL CORRIGAN, ELEANOR BARGER, EILEEN C. LEAHY, MICHAEL J. SMITHWICK, SARAH-JANE CHILVER-STAINER, MORIA BECKWITH, PHILIP DRIVER, CHARLES KELLY, WILLIAM SHULBY, STEPHEN BURR, BILL MILLS, NANCY MARSH, DAVID J. JONES, FABRICE ENDERLIN, CATHRYN CAMPBELL, JAN FENTON, ANN KUHNEN, STEPHEN ETHRIDGE, WILLIAM MOSHER, IAN CARDWELL, DIANA CONRAD, BEVERLY E. MORGAN, STUART HEBPURN, DOES, 1-50,

*Defendants-Appellees*,

GLAXOSMITHKLINE PLC, DOES, 1–30,

*Defendants*.

------------------------------------------------------------------

APPEARING FOR APPELLANTS: EDWIN J. MILLS (Michael J. Klein, *on the brief*), Stull, Stull & Brody, New York, New York; Joseph Daley, Samuel H. Rudman, Mark S. Reich, Robbins Geller Rudman & Dowd LLP, San Diego, California & Melville, New York.

APPEARING FOR APPELLEES: BRIAN T. ORTELERE (Jeremy P. Blumenfeld, Melissa D. Hill, Christopher J. Boran, *on the brief*), Morgan, Lewis & Bockius LLP, New York, New York & Chicago, Illinois.

Appeal from a judgment of the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on May 11, 2011, is AFFIRMED.

2

Plaintiffs, suing on behalf of a putative class of GlaxoSmithKline ("GSK") employees who invested in two company retirement savings plans ("Plans"),[1] appeal from the dismissal of their claims under § 502(a)(2) of the Employee Retirement Income Security Act of 1974 ("ERISA"), see 29 U.S.C. § 1132(a)(2). Plaintiffs charge defendants with breaching fiduciary duties of prudence and loyalty with respect to the Plans' offering of an investment option in GSK common stock ("GSK Stock Fund" or "Fund") during the period May 8, 2007, through November 9, 2010.

We review the challenged dismissal de novo, construing the complaint's allegations and drawing all reasonable inferences therefrom in plaintiffs' favor. See Fait v. Regions Fin. Corp., 655 F.3d 105, 109 (2d Cir. 2011). We also review de novo the district court's conclusions of law regarding duties owed by defendants to plaintiffs under ERISA and the terms of the Plans. See LoPresti v. Terwilliger, 126 F.3d 34, 39 (2d Cir. 1997). We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

---

[1] Commonly referred to as "401(k)" plans for their tax-preferred status, the Plans are defined-contribution retirement savings plans each meeting the definition of an Eligible Individual Account Plan under ERISA, see 29 U.S.C. § 1107(d)(3)(A). Because the parties agree that the governing Plan documents are identical in all material respects for purposes of the instant appeal, we refer to the Plans interchangeably.

1.    Breach of Duty of Prudence

In dismissing plaintiffs' prudence claim, see 29 U.S.C. § 1104(a)(1)(B), the district court concluded that the Plans afforded defendants "no fiduciary discretion with regard to" offering the GSK Stock Fund, Hr'g Tr. 28, J.A. 499.  As a consequence, it ruled that "there is no ability to charge a breach of fiduciary obligation, and we never get into the issues of prudence and imprudence." Id.  Our recent decision in In re Citigroup ERISA Litigation, 662 F.3d 128 (2d Cir. 2011), decided after the district court entered the challenged judgment, indicates that the law is not quite that absolute.  There, we rejected the argument that the conduct of ERISA fiduciaries in continuing to offer or in failing to divest employer stock is "beyond our power to review." Id. at 139.  We explained that ERISA fiduciaries who offer employer stock as an investment should be afforded a presumption of prudence, under which courts review such conduct for "abuse of discretion." Id. at 138.  Mindful that a plan fiduciary is to discharge his duties "in accordance with the documents and instruments governing the plan insofar as" ERISA requires, 29 U.S.C. § 1104(a)(1)(D), we observed that "a fiduciary's failure to divest from company stock is less likely to constitute an abuse of discretion if the plan's terms require—rather than merely permit—investment in company stock," In re Citigroup ERISA Litig., 662 F.3d at 138 (noting that judicial scrutiny correlates inversely with "degree of discretion a plan gives its fiduciaries").

Two principles emerge from our holding in In re Citigroup: (1) a court must look to "the very terms of the plan itself" to assess whether those "terms requir[e] or strongly favor[]

4

investment in employer stock," id. at 139–40; and (2) if the plan is properly so construed, "only circumstances placing the employer in a 'dire situation' that was objectively unforeseeable by the settlor could require fiduciaries to override plan terms," id. at 140 (quoting Edgar v. Avaya, Inc., 503 F.3d 340, 348 (3d Cir. 2007)); accord Gearren v. McGraw-Hill Cos., 660 F.3d 605, 610 (2d Cir. 2011) (per curiam).

Plaintiffs urge us to vacate the dismissal of their complaint and remand the case so that the district court may analyze these questions. We decline this invitation. Determining whether a complaint states a claim "is a task well within an appellate court's core competency." Ashcroft v. Iqbal, 556 U.S. 662, 674 (2009); see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). Further, we may "affirm on any basis for which there is a record sufficient to permit conclusions of law, including grounds upon which the district court did not rely." Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks omitted). Finally, "[w]here plaintiffs do not allege facts sufficient to establish that a plan fiduciary has abused his discretion, there is no reason not to grant a motion to dismiss." In re Citigroup ERISA Litig., 662 F.3d at 139–40 (calling presumption of prudence a "substantial shield" against liability (internal quotation marks omitted)). Under the circumstances of this case, in which we can readily discern that the complaint must be dismissed, it would be highly inefficient to remand the case to the district court, after which its predictable decision to dismiss would occasion a further appeal to this court.

Although plaintiffs assert that the Plans afford fiduciaries unfettered discretion regarding whether to offer the GSK Stock Fund as an investment option for voluntary employee contributions, the terms of the Plans, at a minimum, strongly favor that the Fund be offered to employees. Notably, the Plans denominate the Fund as the default investment where employees fail to select another investment option for certain employer-funded contributions. See 2007 Summary Plan Description at 6, J.A. 304 (stating that contributions equaling 2% of employee's eligible pay will "automatically be invested in the GSK Stock Fund" absent contrary direction by employee); 2009 GSK Retirement Savings Plan § 3.5, J.A. 178. Thus, we cannot say that the plans at issue in this case, which mandate investment of some portion of the company's contribution to employee retirement accounts in GSK stock as a default option, less "strongly favor[]" investment in company stock than did the Citigroup plans. See In re Citigroup ERISA Litig., 662 F.3d at 133–34. Further, the Plans here presuppose a GSK Stock Fund option in sections governing withdrawals, exchange offers, and reinvestment of dividends. Were fiduciaries permitted to withdraw the GSK Stock Fund without restriction, as plaintiffs urge, these references to the Fund in the Plans would render the relevant provisions confusing if not incoherent.

Because the Plans' terms strongly favor an investment option in employer stock, plaintiffs must plausibly plead that GSK faced a "dire situation" to state a claim that Plan fiduciaries abused their discretion in continuing to offer the GSK Stock Fund as an investment and in failing to liquidate GSK stock already held. See id. at 140. While "proof

6

of the employer's impending collapse" is not required, "mere stock fluctuations, even those that trend downhill significantly, are insufficient to establish the requisite imprudence." Id. (internal quotation marks and brackets omitted). Here, plaintiffs allege that, over the class period, GSK suffered problems with the manufacturing, marketing, safety, and efficacy of its flagship pharmaceuticals, leading to criminal prosecutions, civil settlements, fines, and a 30% drop in share value. The presumption of prudence does not require GSK, its employees, or its stock to have performed optimally; the sole inquiry is how the alleged negative events affected the suitability of GSK stock as a long-term retirement investment for employees. While the precise point at which poor performance and corporate concerns equate with dire circumstances may not always be easy to identify, our precedent instructs that far worse prospects than those alleged here are necessary to state an ERISA prudence claim against the charged fiduciaries. See Gearran v. McGraw-Hill Cos., 660 F.3d at 609 (holding 64% price decline owing to public awareness that ratings agency "provided inflated ratings to financial products linked to the subprime-mortgage market" insufficient to overcome presumption of fiduciary prudence); In re Citigroup ERISA Litig., 662 F.3d at 141 (holding 50% price decline attributable to losses incurred on subprime-related investments insufficient to overcome presumption); see also Fisher v. JP Morgan Chase & Co., 469 F. App'x 57, 59 (2d Cir. 2012) (summary order) (holding 55% price decline insufficient to overcome presumption where company remained "viable" and stock "retained significant value," having "rebounded to $25 per share"). Indeed, that conclusion is only reinforced

here, where GSK's share price has since rebounded, the company possesses a market capitalization exceeding $100 billion, and it paid dividends continuously throughout the allegedly "dire" period.

Given the long-term horizon of retirement investing, the complaint does not state a plausible claim that GSK fiduciaries abused their discretion by offering the Fund for employee contributions under the circumstances alleged. Further, plaintiffs concede that they possess no additional allegations with which to augment their complaint on remand. Accordingly, we affirm dismissal of plaintiff's prudence claim.

2.    Breach of Duty of Loyalty in Communication

The district court properly dismissed plaintiff's second claim alleging negligent misrepresentations and omissions by Plan fiduciaries in violation of their duty of loyalty under ERISA. See 29 U.S.C. § 1104(a)(1). The SEC filings and Dimensions newsletters cited by plaintiffs were not made by GSK "in its capacity as plan administrator" and thus are not actionable as misstatements under ERISA. Varity Corp. v. Howe, 516 U.S. 489, 501 (1996). To the extent certain of these communications mention retirement benefits, such statements are not "closely linked" to others "concerning the viability of the corporation." Id. at 505.

Nor does the fact that Summary Plan Descriptions ("SPDs") incorporate certain of GSK's public SEC filings give rise to ERISA liability absent allegations supporting the inference that individual Plan administrators made "intentional or knowing

8

misstatements . . . by incorporating SEC filings into the SPDs." Gearren v. McGraw-Hill Cos., 660 F.3d at 611. The SPDs were prepared by GSK's Benefits Committee, allegedly consisting of Human Resources and Information Technology employees. Plaintiffs' generalized allegation that these defendants "should have known of the material misrepresentations and omissions . . . filed with the SEC," Compl. ¶ 112, does not state a plausible claim for breach of the duty of loyalty under ERISA. See In re Citigroup ERISA Litig., 662 F.3d at 145 ("[W]e decline to hold that the Plan fiduciaries were required to perform an independent investigation of SEC filings before incorporating them into the SPDs.").

3.      Conclusion

We have considered plaintiffs' other arguments and conclude that they are without merit. For the reasons stated, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

9