# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 9, 2013

Lyle W. Cayce
Clerk

No. 12-10416

RANDY KOPP, Individually and on Behalf of All Others Similarly Situated,

> Plaintiff - Appellant

v.

SCOTT W. KLEIN; DONALD B. REED; STEPHEN L. ROBERTSON; THOMAS S. ROGERS; PAUL E. WEAVER; JOHN J. MUELLER; JERRY V. ELLIOT; SAMUEL D. JONES; KATHERINE J. HARLESS; THE EMPLOYEE BENEFITS COMMITTEE; GEORGIA SCAIFE; JOHN DOES 1-20; WILLIAM GIST; STEVEN GABERICH; CLIFFORD WILSON; BILLY MUNDY; ANDREW COTICCHIO; THE HUMAN RESOURCES COMMITTEE; FRANK P. GATTO,

> Defendants - Appellees

---

Appeal from the United States District Court
for the Northern District of Texas

---

Before JOLLY, GARZA, and OWEN, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Randy Kopp ("Kopp"), an employee of Idearc, Inc. ("Idearc") and a participant in the Idearc Management Plan ("Plan"),[1] brought this Employee Retirement Income Security Act ("ERISA") class action against various members

---

[1] The Idearc Savings Plan for Management Employees, the Idearc Savings and Security Plan for New York and New England Associates, and the Idearc Savings and Security Plan for Mid-Atlantic Associates all merged into the Plan, so we refer to the plans collectively as the "Plan."

No. 12-10416

of Idearc's board of directors and Idearc's officers, the Plan Benefits Committee, and the Human Resources Committee ("Idearc Defendants"), representing all current and former participants in the Plan for whose individual accounts the Plan purchased or held shares of the Idearc Stock Fund ("Fund") from November 21, 2006, through March 31, 2009 (the "Class Period"). The district court dismissed Kopp's complaint alleging various breaches of fiduciary duty under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. We AFFIRM the district court's dismissal of all of Kopp's claims.

## I

Kopp filed a complaint alleging the Idearc Defendants breached their fiduciary duties to the plan participants. The district court dismissed Kopp's original complaint without prejudice for failure to state a claim, but granted Kopp's motion to file an amended complaint. Kopp's amended complaint claimed seven bases for relief. Counts I and IV alleged the Idearc Defendants violated a fiduciary duty by allowing plan participants to buy and hold Idearc stock when it was no longer prudent to do so. Count II alleged the Idearc Defendants violated ERISA fiduciary duties by making materially inaccurate representations and failing to disclose material information about the Fund. Count V alleged the Idearc Defendants breached a fiduciary duty to appoint, inform, and monitor the Benefits Committee and Members of the Benefits Committee. Count VI alleged the Idearc Defendants breached co-fiduciary duties. Counts III and VII alleged the Idearc Defendants breached fiduciary duties to avoid divided loyalties and conflicts of interest.[2]

The Plan is an Eligible Individual Account Plan ("EIAP") under ERISA. This action concerns the Fund, held as a retirement investment in the Plan.

---

[2] Because we review here a decision granting Idearc's motion to dismiss, we accept as true all factual allegations contained in the amended complaint. *See, e.g., Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993).

No. 12-10416

Participants could contribute to the Plan and direct their contributions to one or more of the Plan's investment options. The Plan Administrator and the Benefits Committee were the fiduciaries of the Plan. The Plan documents included the Summary Plan Descriptions and the Trust Agreement. The Plan specified that, barring prohibition by ERISA § 406 or 407, Idearc stock would be an investment option until it was "removed by plan amendment" and that the Company stock fund "shall be invested principally in Company Shares." The Plan documents stated:

> The selection and timing of your investment choices are *solely your responsibility* and investment returns are not guaranteed by the Company. In other words, since *you select how your account balance is invested* among the available options , *you are responsible for losses* which are the direct and necessary result of your investment instructions.

(emphasis added).

In November 2006 Verizon Communication, Inc. ("Verizon") spun off its directory operations in a tax-free distribution of stock in Idearc. Under a tax sharing agreement between Verizon and Idearc, Idearc was precluded from restructuring debt, issuing equity, merging with another company, or consolidating or disposing of a significant portion of Idearc's assets for a period of two years after the tax-free exchange in order to retain the tax-free status of the spin-off from Verizon.

According to public documents and information gathered from confidential witnesses, Kopp alleged because the Idearc Defendants wanted to preserve the tax-free status of the spin-off, the Idearc Officer Defendants reported that Idearc was generating sufficient cash flow and liquidity to manage its staggering debt, even though they knew the volume of past due receivables had mushroomed and Idearc had eliminated a great deal of collection staff, greatly decreasing its

ability to collect from overdue accounts.[3] Amended Complaint at ¶ 132, *Fulmer v. Klein*, 3:09–CV–02354–N (N.D. Tex. Mar. 16, 2011) (hereinafter "Complaint"). According to confidential witnesses, Idearc management continued to bill customers that had already canceled their advertising, knowing that the fictitious invoices were uncollectible, and recorded fictitious revenue by generating false invoices to former, current, and non-existent customers. *Id.* ¶ 152. Management "materially overstated net receivables, operating revenue, cash flow, and net income by failing to adjust the provision for uncollectible accounts receivable based upon its knowledge of the deterioration of the quality of [Idearc's] customers and the fictitious billing." *Id.* ¶ 152(f). Prior to the Class Period, Idearc required a credit check on all accounts generating more than $450 in fees. *Id.* ¶ 66. During the course of the Class Period, this minimum credit threshold increased almost 100% to $850. *Id.* Aware that the bad debt levels were rising, Defendant Harless, Idearc Executive Vice President, Treasurer, and Benefits Committee Member, and Defendant Coticchio, Idearc Executive Vice President, Chief Financial Officer, Treasurer, and Benefits Committee member,[4] took affirmative measures to alter Idearc's books to reflect a lower level of bad debt receivables, including, in April 2007, instructing employees to move three million dollars of doubtful accounts to accounts receivable. *Id.* ¶ 69. Because Idearc's tax-free status precluded debt restructuring, the Idearc Defendants were aware Idearc had no financing flexibility and thus no means to deal with its massive debt. *Id.* ¶ 134. By August 2007, the Idearc Defendants were aware that "due to the rapidly increasing build-up of uncollectible receivables a

---

[3] Kopp alleged that as a result of Defendant Coticchio eliminating outstanding receivable collectors during the budget cut, uncollectible receivables increased from $80–$100 million in February 2007 to $250–270 million in July 2008. Complaint ¶ 52–53.

[4] Defendant Coticchio held the position of Treasurer from the inception of the Class Period until November 26, 2007.

liquidity crisis (resulting in an inability to meet obligations as they came due) was imminent." *Id.* ¶ 162(g).

Throughout the Class Period, the Idearc Defendants were aware that Idearc's bad debt expense was rapidly increasing. *Id.* ¶ 189. As of June 2008, Idearc's bad debt had "increased by $16 million, or 50.0%, compared to $32 million for the three months ended June 30, 2007." *Id.* As of October 30, 2008, Idearc announced further growth in its provision rate for bad debt, leading to a stock price decline of 36%. *Id.* ¶ 196 . That month, Idearc faced a possible de-listing from the NYSE for its low stock price over a 30-day period and resorted to borrowing $247 million from a revolving credit facility. *Id.* ¶ 194–195. Idearc began considering a reverse stock split or other options to maintain its listing. *Id.* On November 17, 2008, Idearc closed the fund that allowed plan participants to invest new money in Idearc stock. *Id.* ¶ 4. In December 2008 the Benefits Committee voted to liquidate all holdings in Idearc stock, but subsequently cancelled the scheduled liquidation. *Id.* ¶ 117.

On March 12, 2009, after the two-year period following the Verizon spin-off was complete, Idearc disclosed that it was in danger of defaulting on its loans. *Id.* ¶ 203. In the event of default, the lenders could "declare the total secured debt outstanding to be due and payable and upon acceleration, the Company's unsecured notes would also become due and payable." *Id.* Idearc further disclosed, "If the Company is unable to achieve a 'pre-packaged,' 'pre-negotiated,' or similar plan of reorganization, it would likely be necessary that the Company file for reorganization under federal bankruptcy laws." *Id.* Within two weeks, Idearc filed for bankruptcy, rendering all Idearc stock in the Fund worthless. *Id.* ¶ 207.

The district court dismissed the amended complaint with prejudice, holding Counts I, II, and IV failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). The district court held Kopp's other claims, Counts III, V,

No. 12-10416

VI, and VII, were derivative and dismissed each count because Kopp failed to allege any underlying breach of fiduciary duty.  Kopp appeals the district court's order dismissing the amended complaint for failure to state a claim.

**II**

We review de novo a district court's dismissal under Federal Rules of Civil Procedure 12(b)(6), *Atchafalaya Basinkeeper v. Chustz*, 682 F.3d 356, 357 (5th Cir. 2012), construing all factual allegations in the light most favorable to the plaintiffs, *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  For a complaint to state a claim, the non-moving party must plead enough facts to state a claim for relief that is plausible on its face, *Chustz*, 682 F.3d at 358, i.e., enough facts to raise a reasonable expectation that discovery will reveal evidence of the claim or element.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations and footnotes omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added).  We consider documents attached to a motion to dismiss that are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).  We may also "consider the contents of relevant public disclosure documents which (1) are required to be filed with the SEC, and (2) are actually filed with the SEC.  Such documents should be considered only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents."  *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996).

No. 12-10416

### III

The question before us is narrow: did the amended complaint plead factual matter that, if taken as true, states a claim for breach of fiduciary duty under ERISA.

An EIAP is a type of retirement savings plan governed by ERISA. 29 U.S.C. § 1107(d)(3)(A). ERISA defines an EIAP as "an individual account plan which is (i) a profit-sharing, stock bonus, thrift, or savings plan; (ii) an employee stock ownership plan; or (iii) a money purchase plan which was in existence on September 2, 1974, and which on such date invested primarily in qualifying employer securities." *Id.* Because an EIAP is a defined "contribution plan," as opposed to a "defined benefit" plan, the participants are not entitled to a particular level of benefits, but rather to whatever benefits their investments yield.[5] *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999). ERISA requires every employee benefit plan, including EIAPs, to be "established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). The written instrument must "provide for one or more named fiduciaries who jointly or severally have authority to control and manage the operation and administration of the plan." *Id.*

ERISA's primary purpose is to protect beneficiaries of employee retirement plans. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987) (citing

---

[5]     ERISA recognizes two basic types of retirement plans: "defined contribution plans" and "defined benefit plans." Under ERISA, a defined contribution plan (also known as an "individual account plan") is "a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses." 29 U.S.C. § 1002(34). . . . Any plan that does not meet the definition of defined contribution plan is a defined benefit plan. 29 U.S.C. § 1002(35).

*Hirt v. Equitable Ret. Plan for Employees, Managers, & Agents*, 533 F.3d 102, 104 (2d Cir. 2008).

No. 12-10416

29 U.S.C. § 1001). The statute accomplishes this purpose by imposing fiduciary duties of prudence and loyalty on plan fiduciaries. *In re Citigroup ERISA Litig.*, 662 F.3d 128, 135 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 475 (2012). The duty of prudence requires that fiduciaries act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). The duty of loyalty requires fiduciaries to act "solely in the interest" of plan participants and beneficiaries. 29 U.S.C. § 1104(a)(1).

Section 1104(a)(1)(C) requires plan fiduciaries to act prudently by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so. Accordingly, plan investments in employer securities are generally limited to no more than 10 percent of plan assets. 29 U.S.C. § 1107(a)(2). However, § 1104(a)(2) expressly exempts EIAPs, like the plan at issue here, from the obligation to diversify. Section 1104(a)(2) does not, however, exempt EIAP fiduciaries from the first prong of the prudent man standard, which requires a fiduciary to act with care, skill, prudence, and diligence in any investment the fiduciary chooses. *Donovan v. Cunningham,* 716 F.2d 1455, 1467 (5th Cir. 1983); *Quan v. Computer Scis. Corp.*, 623 F.3d 870, 878–79 (9th Cir. 2010). "Thus, [EIAP] fiduciaries are required to act 'prudently' when determining whether or not to invest, or continue to invest, ERISA plan assets in the plan participants' employer's stock. This is true, even though the duty of prudence [for fiduciaries of EIAP plans] may be in 'tension' with Congress's expressed preference for plan investment in the employer's stock.*" Quan*, 623 F.3d at 878–79 (citing *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 253 (5th Cir. 2008)); *see also Fink v. Nat'l Sav. & Trust Co.*, 772 F.2d 951, 955–56 (D.C. Cir. 1985) ("The investment decisions of a profit sharing plan's fiduciary are subject to the closest

scrutiny under the prudent person rule, in spite of the strong policy and preference in favor of investment in employer stock.") (internal quotation marks omitted).

> ERISA permits employers to act both as trustees and fiduciaries of a plan.
>
> Under ERISA . . . a fiduciary may have financial interests adverse to beneficiaries. Employers, for example, can be ERISA fiduciaries and still take actions to the disadvantage of employee beneficiaries, when they act as employers (*e.g.*, firing a beneficiary for reasons unrelated to the ERISA plan), or even as plan sponsors (*e.g.*, modifying the terms of a plan as allowed by ERISA to provide less generous benefits).

*Pegram v. Herdrich*, 530 U.S. 211, 225 (2000). Importantly, however, fiduciaries with two hats must only wear one hat at a time, and always wear the fiduciary hat when making fiduciary decisions. *Id.* at 225–26. ERISA defines the scope of the fiduciary role as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

Accordingly, ERISA does not hold plan fiduciaries of a "pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account," like the Plan here, liable for losses which result from a participant's exercise of that control. 29 U.S.C. § 1104(c)(1)(A)(ii). This is referred to as the "safe harbor" provision of ERISA § 404(c). Because the safe harbor provision is an affirmative defense that is not appropriate for consideration at the motion to dismiss stage where, as here, the plaintiffs did not raise it in the complaint, we do not consider the applicability of the safe harbor provision to Kopp's claims. *See Pfeil v. State St.*

No. 12-10416

*Bank & Trust Co.*, 671 F.3d 585, 599 (6th Cir.), *cert. denied*, 133 S. Ct. 758 (2012); *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1988) (reversing district court's grant of the motion to dismiss on the basis of affirmative defenses where facts required to prove affirmative defenses not clearly pled in complaint). We note, however, that the fact that plan participants exercise control over plan assets does not automatically trigger the section 404(c) safe harbor. *Pfeil*, 671 F.3d at 599. The Department of Labor regulations governing the circumstances under which a plan qualifies as a section 404(c) plan include over twenty-five requirements that must be met before a fiduciary may invoke the section 404(c) defense. *Id.* (citing 29 C.F.R. § 2550.404c-1).[6] Therefore, the potential applicability of the safe harbor provision does not affect our analysis of Kopp's claims.

## A

We turn first to consider whether the district court correctly dismissed Counts I and IV of the amended complaint, claiming the Idearc Defendants breached their fiduciary duties by allowing plan participants to buy and hold Idearc stock when it was no longer prudent to do so. The district court dismissed Counts I and IV on two separate and independent grounds. First, the district court held the Idearc Defendants had no fiduciary duty to stop offering Idearc stock as an investment option under the Plan because the Plan mandated the Idearc Defendants invest in Idearc stock. Second, the district court held the

---

[6] Even where the safe harbor provision does apply, the safe harbor defense does not relieve fiduciaries of the responsibility to screen investments. *Id.*; *Tibble v. Edison Int'l,* Nos. 10-56406, 10-56415, 2013 WL 1174167, — F.3d — , at *9 (9th Cir. Mar. 21, 2013); *Howell v. Motorola, Inc.*, 633 F.3d 552, 567 (7th Cir. 2011) *cert. denied*, 132 S. Ct. 96 (2011) ("[W]e agree with the position taken by the Secretary of Labor in her *amicus curiae* brief that the selection of plan investment options and the decision to continue offering a particular investment vehicle are acts to which fiduciary duties attach, and that the safe harbor is not available for such acts."); *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 n.3 (4th Cir. 2007) ("[T]his safe harbor provision does not apply to a fiduciary's decisions to select and maintain certain investment options within a participant-driven 401(k) plan.").

No. 12-10416

amended complaint failed to allege sufficient facts to overcome the "presumption of prudence" we adopted in *Kirschbaum v. Reliant Energy Inc.*, 526 F.3d 243, 254 (5th Cir. 2008). We hold that regardless of whether the Idearc Defendants had discretion to cease permitting new Fund investments in Idearc stock or liquidate Fund investments in Idearc stock, the "presumption of prudence" applies at the motion to dismiss stage, and Kopp failed to allege sufficient facts to over come the presumption. Accordingly, we do not reach the issue of whether the Idearc Defendants had discretion under the Plan to stop offering Idearc stock as an investment option or to liquidate Fund investments in Idearc stock.[7]

A brief sketch of the origin of the "presumption of prudence" is in order. Recognizing that Congress has chosen to encourage Plan investment in employer stock, in *Moench v. Robertson*, the Third Circuit held the fiduciary of an ESOP who invests in employer stock is entitled to a presumption that it acted consistently with ERISA. 62 F.3d 553, 569–571 (3d Cir. 1995). The *Moench* court held that because ESOP fiduciaries, unlike other fiduciaries, are presumptively required to invest in employer securities, their decision to invest in those securities should not be reviewed de novo, like the decision to invest in other securities. *Id.* Instead, the court held the decision to invest in employer securities should be reviewed for abuse of discretion. *Id.*

The plaintiff may attempt to rebut the presumption through evidence that "owing to circumstances not known to the settlor and not anticipated by him the making of such investment would defeat or substantially impair the accomplishment of the purposes of the trust." *Id.* (alteration omitted) (quoting

---

[7] We likewise do not reach the issue of whether, if the Idearc Defendants had no discretion to alter Fund investment in Idearc stock, because the dictates of ERISA trump plan language, 29 U.S.C. § 1104(a)(1)(D), the Idearc Defendants had a fiduciary duty to disobey Plan language. In *Kirschbaum*, we likewise did not resolve whether, where plan language mandates investment in employer stock, a fiduciary can have a duty to stop offering employer stock as an investment option. 526 F.3d at 253–54.

No. 12-10416

RESTATEMENT (SECOND) OF TRUSTS § 227 cmt. g). To rebut the presumption, "the plaintiff must show that the ERISA fiduciary could not have believed reasonably that continued adherence to the ESOP's direction was in keeping with the settlor's expectations of how a prudent trustee would operate." *Id.* The *Moench* court explained the rebuttal standard in detail:

> In considering whether the presumption that an ESOP fiduciary who has invested in employer securities has acted consistently with ERISA has been rebutted, courts should be cognizant that as the financial state of the company deteriorates, ESOP fiduciaries who double as directors of the corporation often begin to serve two masters. And the more uncertain the loyalties of the fiduciary, the less discretion it has to act. Indeed, "'[w]hen a fiduciary has dual loyalties, the prudent person standard requires that he make a careful and impartial investigation of all investment decisions.'" *Martin v. Feilen*, 965 F.2d at 670 (citation omitted). As the *Feilen* court stated in the context of a closely held corporation:
>
>> [T]his case graphically illustrates the risk of liability that ESOP fiduciaries bear when they act with dual loyalties without obtaining the impartial guidance of a disinterested outside advisor to the plan. Because the potential for disloyal self-dealing and the risk to the beneficiaries from undiversified investing are inherently great when insiders act for a closely held corporation's ESOP, courts should look closely at whether fiduciaries investigated alternative actions and relied on outside advisors before implementing a challenged transaction.
>
> *Id.* at 670–71. And, if the fiduciary cannot show that he or she impartially investigated the options, courts should be willing to find an abuse of discretion.

*Moench,* 62 F.3d at 572.

The *Moench* court then applied the presumption to the summary judgment evidence offered by the plaintiffs. *Id.* The court held the plaintiffs' evidence showing that there was a precipitous decline in the price of the employer's stock and the Benefits Committee had knowledge of the impending collapse of the

12

stock and its members' own conflicted status may be sufficient to rebut the presumption. *Id.* The summary judgment evidence suggested circumstances had changed "to such an extent that the Committee properly could effectuate the purposes of the trust only by deviating from the trust's direction or by contracting out investment decisions to an impartial outsider." *Id.* The court held, however, that the record was incomplete and remanded the matter to the district court to allow further development of the record. *Id.*

In *Kirschbaum* we elected to adopt the *Moench* presumption of prudence when reviewing the plaintiffs' summary judgment evidence of breach of fiduciary duty for continuing to purchase employer shares in an EIAP Plan that was invested almost entirely in the employer's common stock. *Kirschbaum*, 526 F.3d at 254.

> One cannot say that whenever plan fiduciaries are aware of circumstances that may impair the value of company stock, they have a fiduciary duty to depart from ESOP or EIAP plan provisions. Instead, there ought to be persuasive and analytically rigorous facts demonstrating that reasonable fiduciaries would have considered themselves bound to divest.

*Id.* at 256. We held that in contrast to the company-wide failure in *Moench,* the plaintiffs' evidence of round-trip trading and an initial 40% drop in stock value was insufficient to rebut the presumption. *Id.* at 255–56 ("There is no indication that REI's viability as a going concern was ever threatened, nor that REI's stock was in danger of becoming essentially worthless. This is a far cry from the downward spiral in *Moench*, and much less grave than facts other courts routinely conclude are insufficient to rebut the *Moench* presumption."). We concluded, "Mere stock fluctuations, even those that trend downward significantly, are insufficient to establish the requisite imprudence to rebut the *Moench* presumption." *Id.* (quoting *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1099 (9th Cir. 2004)). While we held the *Moench* presumption is a

"substantial shield,"we did "not hold that the *Moench* presumption applies only in the case of investments in stock of a company that is about to collapse." *Id.*

Other circuits have also adopted the *Moench* presumption of prudence for reviewing ESOP fiduciaries' decisions to invest in employer stock. In *Kuper v. Iovenko*, the Sixth Circuit applied the presumption of prudence in denying the plaintiffs' claim that the defendants breached their fiduciary duty by failing to liquidate ESOP funds during a trust-to-trust transfer. 66 F.3d 1447, 1459–60 (6th Cir. 1995). Plaintiffs proffered evidence that the defendants were aware of the company's financial woes, but the defendants proffered evidence that several investment advisors recommended holding employer stock during the period at issue. *Id.* at 1460. The court held the plaintiffs failed to overcome the presumption of prudence. *Id.* In *Quan v. Computer Scis. Corp.*, the Ninth Circuit adopted the *Moench* presumption of prudence in evaluating whether an ESOP fiduciary can be held liable for failing to divest employer stock. 623 F.3d 870, 883 (9th Cir. 2010). The *Quan* court applied an even more rigorous burden for plaintiffs to meet than the *Moench* court did, holding "if there is room for reasonable fiduciaries to disagree as to whether they are bound to divest from company stock, the abuse of discretion standard protects a fiduciary's choice not to divest." *Id.* at 882. "To overcome the presumption of prudent investment, plaintiffs must therefore make allegations that clearly implicate the company's viability as an ongoing concern or show a precipitous decline in the employer's stock" and "that the company is on the brink of collapse or is undergoing serious mismanagement." *Id.* (internal quotation marks and alterations omitted). In *Quan* the plaintiffs offered evidence that the fiduciaries were aware of tax accounting issues and improper stock option granting practices, but presented no evidence that it was unreasonable for the plaintiffs to believe the company would not overcome these problems. *Id.* at 884. Accordingly, the court held plaintiffs failed to rebut the presumption of prudence. *Id.*

No. 12-10416

*Moench, Kuper, Kirschbaum*, and *Quan* all applied the presumption in the context of a factual record. *Moench*, 62 F.3d at 559–60; *Kuper*, 66 F.3d at 1460; *Kirschbaum*, 526 F.3d at 256; *Quan*, 623 F.3d at 874. Circuits that have recognized a presumption of prudence have split as to the presumption's applicability to a motion to dismiss. For example, the Second Circuit held the presumption applies at the motion to dismiss stage:

> [W]e reject plaintiffs' argument that the *Moench* presumption should not apply at the pleading stage. The "presumption" is not an evidentiary presumption; it is a standard of review applied to a decision made by an ERISA fiduciary. Where plaintiffs do not allege facts sufficient to establish that a plan fiduciary has abused his discretion, there is no reason not to grant a motion to dismiss.

*Citigroup*, 662 F.3d 128 at 139; *see White v. Marshall & Ilsley Corp.*, 714 F.3d 980, 991 (7th Cir. 2013) (applying presumption of prudence at motion to dismiss stage); *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1281 (11th Cir. 2012) (same); *Edgar v. Avaya, Inc.*, 503 F.3d 340, 349 (3d Cir. 2007) (same). The Sixth Circuit held, however, that the presumption is inapplicable at the motion to dismiss stage:

> Our holding [that the presumption of prudence does not apply at the motion to dismiss stage] derives from the plain language of *Kuper* itself where we explained that an ESOP plaintiff could rebut this presumption of reasonableness by *showing* that a prudent fiduciary acting under similar circumstances would have made a different investment decision. The presumption of reasonableness in *Kuper* was [thus] cast as an evidentiary presumption, and not a pleading requirement.
> . . .
> Courts are required to accept the well-pleaded factual allegations of a complaint as true and determine whether those allegations state a plausible claim for relief. It follows that courts should not make factual determinations of their own or weigh evidence when considering a motion to dismiss. Precisely because the presumption of reasonableness is an evidentiary standard and concerns questions of fact, applying the presumption at the

pleadings stage, and determining whether it was sufficiently rebutted, would be inconsistent with the Rule 12(b)(6) standard.

*Pfeil*, 671 F.3d at 592–93 (internal citations and quotation marks omitted). Importantly, the Sixth Circuit distinguished its holding from *Citigroup* on the grounds that the Second Circuit requires a higher rebuttal standard than the Sixth Circuit to overcome the *Moench* presumption. *Id.* at 595–96. While the Second Circuit requires plaintiffs to allege that the defendants knew or should have known that the employer was in a dire situation, the Sixth Circuit requires a plaintiff to prove only that "a prudent fiduciary acting under similar circumstances would have made a different investment decision." *Id.* at 595.

We join the Second, Third, Seventh, and Eleventh Circuits in holding the presumption of prudence applies at the motion to dismiss stage. Unlike the Sixth Circuit, we adopted a *Moench* rebuttal standard akin to the rebuttal standard adopted by the Second Circuit, requiring plaintiffs to show that the defendants knew or should have known the viability of the company was threatened or the employer's stock was in danger of becoming worthless to rebut the presumption of prudence. *Kirschbaum*, 526 F.3d at 254. Morever, Kopp's contention that applying the presumption to the motion to dismiss stage violates the notice pleading requirements of Federal Rule of Civil Procedure 8 is unavailing. *Edgar*, 503 F.3d at 349 ("[I]f a plaintiff does not plead all of the essential elements of his or her legal claim, a district court is required to dismiss the complaint pursuant to Rule 12(b)(6)."). There is no reason to permit a case to proceed to discovery where the facts, even if proven true, would not establish that defendants abused their discretion in failing to divest employer stock. *Id.*

Accordingly, we must determine whether the facts Kopp alleged in the amended complaint suffice to overcome the presumption of prudence. Under *Kirschbaum*, if Kopp alleged facts that would show the Idearc Defendants knew or should have known the viability of Idearc was threatened or Idearc's stock

was in danger of becoming worthless, Kopp alleged sufficient facts to overcome the presumption of prudence at the motion to dismiss stage. *See Kirschbaum*, 526 F.3d at 254–55. Complicating our inquiry is the fact that much of the information Kopp alleges the Idearc Defendants were privy to that gave rise to the duty to divest was non-public information provided by confidential witnesses. "Fiduciaries may not trade for the benefit of plan participants based on material information to which the general shareholding public has been denied access." *Kirschbaum*, 526 F.3d at 256; *Quan*, 623 F.3d at 883 n.8 ("[F]iduciaries are under no obligation to violate securities laws in order to satisfy their ERISA fiduciary duties."); *see Lanfear*, 679 F.3d at 1284–85 (holding ERISA fiduciaries do not have a duty to provide plan participants with nonpublic information pertaining to specific investment options). Kopp's allegation that the Idearc Defendants had a duty, based on their knowledge of inside information, not only to cease permitting investments in Idearc stock, but also to divest Idearc stock is untenable under securities laws. A duty to divest employer stock, arising from knowledge of inside information, might amount to a duty to violate securities laws. *White*, 714 F.3d at 982, 992 (holding plan fiduciaries have no duty to violate securities laws by trading on inside information). Kopp contends a fiduciary may satisfy his or her disclosure requirements under ERISA and securities laws by concurrently disseminating material information to all shareholders: plan participants and non-employee shareholders. Of course, "from a practical standpoint, compelling fiduciaries to sell off a plan's holdings of company stock may bring about precisely the result plaintiffs seek to avoid: a drop in the stock price." *Kirschbaum*, 526 F.3d at 256. Moreover, it is firmly established under our precedents that ERISA does not place a general duty on plan administrators to disclose all adverse inside information to the public. *See Kujanek v. Houston Poly Bag I, Ltd.*, 658 F.3d 483, 488 (5th Cir. 2011) (limiting the duty to instances where there are "material facts affecting the interest of the

beneficiary which the fiduciary knows the beneficiary does not know but needs to know for his protection" (quoting *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 412 (5th Cir. 2003))); *Ehlmann v. Kaiser Found. Health Plan of Tex.*, 198 F.3d 552, 556 (5th Cir. 2000) (holding the case law "do[es] not warrant the wholesale judicial legislation of a broad duty to disclose that would apply regardless of special circumstance or specific inquiry"). It is not the province of the courts to create such a duty out of whole cloth. *See Baker v. Kingsley*, 387 F.3d 649, 662 (7th Cir. 2004) ("[I]f we were to create a new fiduciary duty [to disclose corporate well-being] we run the risk of disturbing the carefully delineated corporate disclosure laws.").[8]

While individuals with access to inside information may not trade on that information, ceasing making new investments in stock because of access to inside information is not barred by insider trading laws. 17 C.F.R. § 240.10b–5; *see Chiarella v. United States*, 445 U.S. 222, 227 (1980). Therefore we proceed to analyze Idearc's duties separately. First, considering both public and nonpublic information known to the Idearc Defendants, we analyze whether the Idearc Defendants had a duty to cease allowing Plan investments in Idearc stock. Second, considering only public information, we analyze whether the Idearc Defendants had a duty to liquidate Fund investments in Idearc stock.

Considering both public and nonpublic information in the complaint, Kopp alleged the Idearc Defendants knew or should have known that Idearc's declining customer base, loosened credit policies, growing uncollectible receivables, and reduced account collection workforce were causing serious financial difficulties for Idearc that the Idearc Defendants had no reason to believe could be resolved in the foreseeable future. Idearc Defendants allegedly

---

[8] We do not express an opinion as to whether the Idearc Defendants violated securities laws. If there were violations of the securities laws, the remedy for those violations would be under securities laws and not under ERISA.

knew or should have known of rising debts, especially bad debts, throughout the class period. Kopp alleged that as of August 2007, the Idearc Defendants were aware due to mounting uncollectible receivables Idearc faced an impending liquidity crisis that would prevent Idearc from meeting its obligations as they came due. Furthermore, Kopp alleged the Idearc Defendants were aware of the strictures of the tax-free spin-off, which constrained restructuring options, and thus knew they lacked the financing flexibility to deal with mounting debt. Kopp also alleged the Idearc Defendants were aware that Idearc's stock was drastically overvalued due to purposeful misstatements in accounting disclosures. For example, Kopp alleges the Idearc Defendants were aware Idearc's financial statements falsely recorded millions of dollars of uncollectible receivables as collectible and recorded revenue the company generated from fictitiously billing customers who already cancelled their accounts. By June of 2008, Idearc's bad debt had doubled compared to its bad debt provision rate for the same quarter in 2007. On October 30, 2008, Idearc announced that its provision rate for bad debt reached 8.2%, and its stock price dropped 36%. Just over two weeks later, on November 17, 2008, the Idearc Defendants, aware that Idearc's stock might be de-listed from the NYSE, disallowed new plan investments in Idearc stock. Clearly Kopp alleged sufficient facts that if proven would demonstrate the Idearc Defendants had reason to be concerned about Idearc's future financial performance.

Nonetheless, the presumption of prudence protects the decisions of fiduciaries to invest in employer stock *unless* the fiduciaries were aware that the viability of the employer was threatened or the employer's stock was in real danger of becoming essentially worthless. *Kirschbaum*, 526 F.3d at 254–55. Merely because fiduciaries were aware an employer was engaged in unscrupulous conduct or facing financial difficulties does not alone suffice to prove the fiduciaries were aware the employer was in a dire situation. *See*

*Citigroup*, 662 F.3d at 141. Fiduciaries' decisions are not to be judged with the benefit of hindsight, but from the facts known to them at the time. *Id.* Here, while the facts Kopp pleaded suffice to show the Idearc Defendants were aware Idearc faced serious financial difficulties, the facts, if proven, would not show that the Idearc Defendants were aware Idearc's stock was in danger of becoming essentially worthless or Idearc's viability as a company was threatened, at least prior to the time the Idearc Defendants ceased offering Idearc stock as an investment option under the Plan. Although Fund investments in Idearc stock were eventually rendered worthless, at the time the Idearc Defendants ceased permitting new investments in Idearc stock, the stock had only suffered a 36% drop over the previous three months. While the percentage of the stock drop does not alone determine whether the plaintiffs can overcome the presumption of prudence, in *Kirschbaum* we held insider knowledge of illegal trades and a 40% drop in the employer's stock price was insufficient to overcome the presumption. *Kirschbaum* 526 F.3d at 255; *see also Citigroup*, 662 F.3d at 141 (50% drop insufficient to overcome presumption of prudence); *Edgar*, 503 F.3d at 344 (25% drop insufficient to overcome presumption of prudence); *Kuper*, 66 F.3d at 1451 (80% drop insufficient to overcome presumption of prudence). Therefore, even accounting for the Idearc Defendants' knowledge of nonpublic information, Kopp did not allege sufficient facts to overcome the presumption that the Idearc Defendants acted prudently in their decision not to cease offering Idearc stock as an investment option until November 17, 2008.

Turning to the question of whether the Idearc Defendants had a duty to liquidate the Fund's holdings in Idearc stock, Kopp did not allege sufficient public information to overcome the presumption that the Idearc Defendants acted prudently by choosing not to liquidate Idearc stock. Much of the information Kopp relied on to show the Idearc Defendants were aware of threats to Idearc's viability is nonpublic information. For example, Kopp does not allege

the public was aware that Idearc had falsely recorded millions of dollars of uncollectible accounts receivable as collectible or that Idearc recorded revenue from fictitious invoices to current, former, and even nonexistent customers. Moreover, Kopp alleges the Idearc Defendants did not disclose that Idearc had eliminated a substantial portion of its collections staff or that Idearc had loosened its credit policies to attract new customers who were more apt to default on their payments. Because Idearc misrepresented its financial health in financial disclosures, the public did not have a reason to be concerned that Idearc's stock would become essentially worthless. In the months following the Idearc Defendants' decision to stop offering Idearc stock as an investment option under the Plan and prior to Idearc filing for bankruptcy, there is a near total dearth of facts asserted in the complaint indicating the Idearc Defendants had any reason to believe, based on public *or* nonpublic information that Idearc was on the brink of collapse.[9] As such, at least based on the public information available during the Class Period, Kopp did not allege sufficient facts to overcome the presumption that the Idearc Defendants acted prudently by choosing not to liquidate Fund investments in Idearc stock.

Therefore, dismissal of Counts I and IV was proper.

**B**

We proceed to consider whether the district court correctly dismissed Kopp's claim for inaccurate disclosures and nondisclosures (Count II). The district court held the amended complaint did not state a claim for violating the duty of candor by "omitting material information, making allegedly incorrect statements about Idearc's financial stability, or failing to correct these alleged misstatements in the filings" because Idearc's Summary Plan Description

---

[9] While the March 12, 2009 fiduciary communication, released about three weeks prior to the end of the Class Period, does raise the specter of bankruptcy, it is mentioned as one of several refinancing options under consideration.

("SPD") did not incorporate Idearc's public filings.  The district court also held Kopp did not show the Idearc Defendants had a duty to affirmatively disclose company information or that the Idearc Defendants breached their fiduciary duties through non-disclosure.  The district court held Kopp did not allege special circumstances or an inquiry by one of the Plan beneficiaries which would give rise to an affirmative duty to disclose company information under ERISA.

Kopp does not challenge the district court's holding that the SPD did not incorporate the public disclosures, but alleges this does not preclude a holding that the Idearc Defendants are liable for nondisclosure.  Kopp asserts ERISA's fiduciary duty of loyalty imposes on the Idearc Defendants obligations to disclose information over and above the statute's express disclosure requirements.  Kopp contends ERISA's duty of loyalty and the common law of trusts impose an obligation on the Idearc Defendants to disclose material facts affecting beneficiaries.

We have held a plan administrator violated ERISA's duty of loyalty by withholding information where the administrator withheld information about the plan benefits or the plan participants' rights under the plan when a plan participant requested such information.  *Kujanek*, 658 F.3d at 489.  We have explicitly refused, however, to judicially engraft onto ERISA's duty of loyalty a "broad duty to disclose that would apply regardless of special circumstance or specific inquiry."  *Ehlmann*, 198 F.3d at 556.  Moreover, we held in *Kirschbaum* that there could be no duty to disclose non-public information for the benefit of plan shareholders as this would violate securities laws.  *Kirschbaum*, 526 F.3d at 256 ("Fiduciaries may not trade for the benefit of plan participants based on material information to which the general shareholding public has been denied access.").  Here Kopp alleged no special circumstance or specific inquiry mandating the Idearc Defendants disclose non-public information to plan

participants.  No general duty to disclose non-public information exists under ERISA or under our precedents.  Therefore, dismissal of Count II was proper.

## C

Based on its dismissal of Kopp's claims for breach of fiduciary duty for investment in Idearc stock and for inaccurate disclosures and nondisclosures, the district court dismissed each of Kopp's remaining claims, Counts III, V, VI, and VII, as derivative.  The district court held to prevail on the derivative claims the Idearc Defendants would have had to prevail on an underlying allegation of breach of fiduciary duties.  Kopp contends the district court erred by characterizing the remaining claims as derivative and thus erred by dismissing these claims even if the investment and disclosure claims should be dismissed.  We proceed to analyze whether the district court erred by dismissing the remaining claims as derivative.

### 1

Counts III and VII allege the Idearc Defendants breached their fiduciary duty of loyalty by failing to avoid conflicts of interest while managing the Plan.  Specifically, Kopp alleges the Idearc Defendants' personal wealth was impermissibly tied to Idearc's financial performance.

"ERISA's duty of loyalty is the highest known to the law." *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 294 (5th Cir. 2000) (internal quotation marks omitted).  ERISA § 404 requires fiduciaries to manage the plan for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan.  29 U.S.C. § 1104(a).  The Supreme Court described ERISA's duty of loyalty as "[t]he most fundamental duty owed by the trustee to the beneficiaries of the trust . . . . It is the duty of a trustee to administer the trust solely in the interest of the beneficiaries." *Pegram*, 530 U.S. at 224 (citing 2A A. SCOTT & W. FRATCHER, TRUSTS § 170, at 311 (4th ed. 1987)).

No. 12-10416

Kopp correctly points out that some courts have held a complaint states a claim for breach of the duty of loyalty where the compensation of defendant fiduciaries was tied to the value of company stock or where fiduciaries traded on their personal accounts with inside information they did not share with plan participants. *See, e.g., In re ADC Telcomms., Inc.*, *ERISA Litig.* No. MASTER FILE, 03-2989 ADM/FLN, 2004 WL 1683144, at *8 (D. Minn. July 26, 2004); *In re Sears, Roebuck & Co. ERISA Litig.*, No. 02 C 8324, 2004 WL 407007, at *5 (N.D. Ill. Mar. 3, 2004) ("Officers had an incentive to heavily invest the Plan's funds in Sears stock instead of properly informing Plan participants of material negative information concerning the irregularities.").

Here Kopp does not allege the Idearc Defendants' compensation was impermissibly tied to the price of Idearc's stock, but that their compensation was impermissibly tied to Idearc's financial performance. Kopp cites no provision of ERISA or case that supports his contention that such a compensation scheme violates ERISA's duty to avoid conflicts of interest. Accordingly, dismissal of Counts III and VII was proper.[10]

**2**

Count V alleges the Idearc Defendants breached their fiduciary duty to appoint, inform, and monitor plan fiduciaries. Kopp alleges four breaches of fiduciary duty under this count: (i) the Idearc Defendants failed to monitor the Benefits Committee members to ensure they met their primary obligations; (ii) the Idearc Defendants failed to provide crucial information about the threat of Idearc's viability to the Benefits Committee members to ensure they were sufficiently well-informed to meet their primary fiduciary duties; (iii) seeing that

---

[10] In the amended complaint Kopp also alleges the Idearc Defendants breached their duty to avoid conflicts of interest by failing to timely hire independent fiduciaries who could make independent judgments about Plan investments. Kopp waived this issue by failing to adequately brief it on appeal. *Sanders v. Unum Life Ins. Co. of Am.*, 553 F.3d 922, 926 (5th Cir. 2008).

the Benefits Committee members did not seek counsel regarding Idearc's financial troubles, the Director Defendants and the HR Committee failed to replace the Committee members; and (iv) the Idearc Defendants breached their duty to appoint Benefits Committee members with the requisite knowledge or background to oversee Plan investments.

Because a claim for breach of fiduciary duty to appoint, inform, and monitor plan fiduciaries is a derivative claim, *In re Dell, Inc. ERISA Litig.*, 563 F. Supp. 2d 681, 695 (W.D. Tex. 2008) ("To be held responsible for a failure to monitor or as a co-fiduciary, Plaintiffs must establish an underlying breach of fiduciary duty."); *Edgar*, 503 F.3d at 349 n.15, dismissal of Count V was proper.

**3**

Count VI alleges the Idearc Defendants breached a co-fiduciary duty. An ERISA co-fiduciary liability arises when a fiduciary's actions meets one of the following criteria:

> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a). Count VI alleges each of the Idearc Defendants were aware of breaches of fiduciary duty by other Defendants but failed to make efforts to remedy those breaches. Count VI further alleges the Idearc Defendants concealed the breaches of their co-fiduciaries.

Because this is a derivative claim, *Izzarelli v. Rexene Prods. Co.*, 24 F.3d 1506, 1525 n.34 (5th Cir. 1994); *In re Dell, Inc. ERISA Litig.*, 563 F. Supp. 2d at

No. 12-10416

695, and there is no underlying breach of fiduciary duty, dismissal of Count VI was proper.

## IV

For these reasons, we AFFIRM the judgment of the district court.